# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RAJNIKANT PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-0187 (RMC) |
| | ) | |
| ERIC K. SHINSEKI | ) | |
| Secretary of Veterans Affairs, [1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Rajnikant Patel has been a Medical Technologist at the Department of Veterans Affairs[2] since 1982.  Mr. Patel claims that VA intentionally discriminated against him because of his race, age, religion, gender, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when he was not selected for promotions in 2004.  Eric Shinseki, VA Secretary, responds that the appropriate agency officials selected the most qualified candidates for each of these positions, and Mr. Patel was not the most qualified.  The Court will grant summary judgment in favor of the Secretary because the Court finds no genuine dispute as to any material fact and the Secretary is entitled to judgment as a matter of law.

---

[1] Secretary Shinseki is the successor to former Secretary R. James Nicholson and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] The Department of Veterans Affairs (VA) was established as a Cabinet-level position on March 15, 1989 and was previously called the Veterans Administration.  *See History*, United States Department of Veterans Affairs, http://www.va.gov/about_va/vahistory.asp (last visited March 8, 2013).

## I.  FACTS

Mr. Patel was born in 1941 and is a male, Indian-Asian, of Indian origin, and Hindu.  Def. Statement of Undisputed Facts [Dkt. 28] ¶ 1 ("Def. SUF").  He began work at VA in July 1982 as a Medical Technologist.  *Id.*  On October 20, 2004, VA posted a vacancy announcement for one Supervisory Medical Technologist position.  *See* Def. Mot., Ex. 4 [Dkt. 28-4] (Lead Medical Technologist and Supervisory Medical Technologist Job Announcements ("Job Announcements")) at 20-21.  On October 27, 2004, VA posted a vacancy announcement for two Lead Medical Technologist positions.  *Id.* at 2-3.  Both the Supervisory Medical Technologist position and the Lead Medical Technologist positions required a degree in Medical Technology, Chemistry, or Biology and one year of specialized experience as a Medical Technologist.  *Id.* at 2-3, 20-21.  Mr. Patel applied for all three positions.  Def. SUF ¶¶ 3, 16.

The VA Office of Human Resources ("HR") determined that Mr. Patel and nine other applicants met the minimum qualifications for the Lead Medical Technologist positions and referred these applicants to a three-member interview panel.  *Id.* ¶ 8.  The panel interviewed Mr. Patel in October or November of 2004.  *Id.* ¶ 9.  The panel asked all applicants 12 standardized performance-based questions.  The panel rated the applicants on a scale of 1-5 for each question.  The total score per panelist for an applicant (a sum of each panelist's scores on the 12 questions) was averaged to arrive at the interview score for that applicant.  *See* Def. Mot., Ex. 8 [Dkt. 28-8] (Interview Questions and Ranking for Lead Medical Technologist).  Mr. Patel scored 27.33 in the interview out of a possible score of 60.  Def. SUF ¶ 12; *see also* Interview Questions and Ranking for Lead Medical Technologist at 7.  Dr. Robert Dufour, the Chief for Pathology and Laboratory Medicine Service at the time, served as the selecting official for the positions.  Def. SUF ¶ 14.  On December 12, 2004, Dr. Dufour selected applicant Christina Santos, who had an interview score of 50, and applicant Maripe Floriza, who had an interview

score of 49, to fill the Lead Medical Technologist positions.  Ms. Santos and Ms. Floriza were the highest scoring interviewees.  Def. SUF ¶¶ 13, 15; Def. Mot., Ex. 5 [Dkt. 28-6] (Merit Promotion File for Lead Medical Technologist).   Each successful applicant is an Asian female of Filipino descent.  Def. SUF ¶¶ 5, 6.

HR also referred Mr. Patel and several other applicants to another three-member interview panel because they met the minimum qualifications for the Supervisory Medical Technologist position.  *Id.*  ¶ 19.  Again, the interview panel asked all applicants a set of standardized questions.  Mr. Patel scored 33.3 in the interview.  *Id.* ¶¶ 21, 23.  Dr. Dufour again served as the selecting official.  *Id.* ¶ 24.  On November 28, 2004, he selected applicant Peregrina Lee, who scored 52.7 in her interview.  Ms. Peregrina was the highest scoring interviewee.  *Id.* ¶ 26; Def. Resp. [Dkt. 36] at 3.  Ms. Lee is an Asian female of Filipino descent.  Def. SUF ¶ 18.

Mr. Patel filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2004.[3]  Compl. [Dkt. 1] ¶ 4; Pl. Opp. at 2.  The EEOC issued Plaintiff a right-to-sue letter on October 27, 2006.  Compl., Att. 1 [Dkt. 1-1] (EEOC Final Order).  Within ninety days of receipt of this letter, on January 27, 2007, Mr. Patel filed his Complaint in this Court.

At the end of discovery, the Secretary filed a motion for summary judgment, asserting that there is no genuine dispute as to any material fact.  He argued that Mr. Patel failed to establish that his legitimate nondiscriminatory reason for his non-selection—that he was not as qualified as the selected applicants for the positions in question—was mere pretext.  Mr. Patel

---

[3] Mr. Patel states in his opposition that he has "exhausted all his administrative remedies."  *See* Pl. Opp. [Dkt. 32-1] at 2.  The Secretary does not refute this statement.  Because the Court must draw all inferences in favor of the nonmovant, the Court infers that Mr. Patel has met all pre-suit requirements for federal employees.  *See* 29 C.F.R. § 1614.105(a) (pre-complaint processing); *see also Weber v. Battista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007) (explaining Title VII exhaustion requirements for federal employees).

responded that the selected applicants were not as qualified as he because he had an American

Society of Clinical Pathologists ("ASCP") certification, which the selectees lacked and which

was required at the time of the selections.  The Secretary countered that the ASCP certification

was not required when the jobs were filled.

On November 1, 2012, the Court directed the Secretary to "provide the Court with

the citation for the relevant VA regulations or policies concerning qualifications for the Lead

Medical Technologist and Supervisory Medical Technologist positions in place at the time of

selection."  The Secretary responded to the Court's order on November 7, 2012.  Mr. Patel

responded to the Secretary's supplementary briefing on December 11, 2012.  Because the Court

concludes that an ASCP certification was not required when the selections were made, and that

there is no other dispute of material fact to require a trial, it will grant summary judgment in

favor of the Secretary.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted

against a party who "after adequate time for discovery and upon motion . . . fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

4

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

### B.  Title VII of the Civil Rights Act of 1964

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees.[4]  42 U.S.C. § 2000e-2.  For many years, courts evaluated discrimination and retaliation claims under Title VII using the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Adewole v. PSI Services, Inc.*, 798 F. Supp. 2d 57 (D.D.C. 2011) (explaining the legal standard for Title VII discrimination and retaliation claims).  Plaintiffs were first required to establish a prima facie case of discrimination and then the burden shifted to the defendant to articulate a nondiscriminatory reason for its adverse action.  *See Holcomb v. Powell*, 433 F.3d 889, 895-96 (D.C. Cir. 2006); *Carney v. Am. Univ.*, 151 F.3d 1090, 1092–93 (D.C. Cir. 1998).  Recently, however, the D.C. Circuit has instructed that the analysis of a prima facie case is "almost always irrelevant" and "is a largely unnecessary sideshow," once the employer has put forth a legitimate, nondiscriminatory reason for its action.  *Brady v. Office of the Sgt. at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008).  Thus, when "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*."  *Id.* at 494 (emphases in original).  The court will proceed to the ultimate issue of discrimination or

---

[4] The Court has jurisdiction over this case because Mr. Patel's claims arise under federal law. *See* 28 U.S.C. § 1331.  Additionally, venue is proper in this Court pursuant to Title VII's venue provision.  *See* 42 U.S.C. § 2000e-5(f)(3) (stating that venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . .").

retaliation without tarrying: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* In answering this ultimate question, the prima facie case is relevant as part of all of the evidence to be considered. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) ("[T]he court reviews each of the three relevant categories of evidence— prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination or] retaliation." (internal citation omitted)).[5]

## III. ANALYSIS

The Secretary moves for summary judgment, asserting that Dr. Dufour selected the most qualified applicants for the relevant positions and that Mr. Patel, while qualified, was less qualified than those selected. Accordingly, the Secretary argues that he has provided legitimate nondiscriminatory reasons for Mr. Patel's non-selection and Mr. Patel has failed to make any showing that these reasons are mere pretext. Mr. Patel does not dispute that the selectees scored significantly higher in their interviews than him; he argues only that the selectees did not have all the requisite qualifications and he did. Specifically, Mr. Patel contends

---

[5] Although Mr. Patel listed age as a basis for discrimination in the instant Complaint, he nowhere argues age as a basis for discrimination. Title VII does not prohibit discrimination on the basis of age. The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, provides recourse for such discrimination. Because Mr. Patel nowhere cites the ADEA or argues age as a basis for discrimination, any argument concerning age discrimination is waived. Similarly, Mr. Patel offers no evidence or argument to support his allegation of discrimination based on his religion, and that claim is waived. Inasmuch as Mr. Patel and the selectees are all Asian, the Secretary's summary judgment motion on Mr. Patel's claim of race discrimination will be granted. The Court considers gender and national origin as possible bases for Mr. Patel's suit.

that none of the selectees possessed a certificate from the American Society of Clinical Pathologists at the time of selection as he did.  The Secretary does not dispute that the selectees had not been so certified but contends that ASCP certification was not required at the time and that the selectees met all required qualifications.  Because Mr. Patel does not dispute that the selectees scored significantly higher on the interviews and offers no other argument to demonstrate pretext, this case turns on whether an ASCP certification was required for the positions at the time of selection.

Determining the timing of a requirement of an ASCP certification has been confused by the Secretary's inconsistent statements during discovery and briefing.  During discovery, the Secretary responded to an interrogatory, "*As of* December 6, 2003, under Public Law 108-170, 'Veterans Health Care, Capital Asset and Business Improvement Act of 2003,' *ASCP certification became mandatory* for Medical Technologists."  *See* Pl. Resp., Att. 1 [Dkt. 40-1] (Discovery Responses) at 11 (emphases added).  In the Secretary's Reply during briefing, however, he stated that this response "was inaccurate and is withdrawn.  It should have read, '*Subsequent to* the passage of December 6, 2003, of Public Law 108-170, Veterans Health Care, Capital Asset and Business Improvement Act of 2003,' *ASCP certification became one of the types of certification that was mandatory* for Medical Technologists.'"  Def. Reply [Dkt. 34] at 4 n.1 (emphases added).  The Reply also stated that "Public Law 108-170 did not change the status of medical technologists within VA nor did it add any additional requirements to hold such a position within VA.  That power has consistently been vested by Congress in the Secretary."  *Id.* at 5.  Subsequently, the Secretary filed an errata explaining that this statement was inaccurate

and should have said, "While Public Law 108-170 converted a number of VHA[6] occupations, including medical technologists, to hybrid occupations under Title 38, it did not add any additional requirements to hold such a position within VA.  That power has consistently been vested by Congress in the Secretary."  *See* Errata [Dkt. 38].  The Secretary has now provided statutory and regulatory history concerning the qualification requirements for certain personnel within VA to allow the Court to determine whether an ASCP certification was required for these positions at the time of selection.

   For this purpose, the Court must examine the shift in the law and policies regarding Medical Technologists in the years preceding and following Mr. Patel's non-selection in late 2004.  To provide oversight of those laboratories that perform certain kinds of testing and those laboratories seeking reimbursement under Medicare, Congress passed the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), Pub. L. No. 100–578, 102 Stat. 2903 (1988), to amend the Public Health Service Act, 42 U.S.C. § 263(a).  The Department of Health and Human Services ("HHS") published regulations to implement CLIA.  *See* 42 C.F.R. Part 493.  In 1992, Congress granted discretion to the VA Secretary over the standards for labs under his jurisdiction, although such standards must be consistent with HHS regulations promulgated under CLIA.  *See* Department of Veterans Affairs, and Housing and Urban Development, and Independent Agencies Appropriations Act of 1992, Pub. L. No. 102-139, § 101(a), 105 Stat. 736 (1991); *see also* Def. Resp., Ex 22. [Dkt. 36-4] (VHA Handbook 1106.1 (June 4, 2003)) ¶ 2 (describing the statutory and regulatory background for policies governing VA labs).  In 1998, instead of implementing regulations, VA published a handbook that set forth its lab standards,

---

[6] The VHA is the Veterans Health Administration and is a component of the Department of Veterans Affairs responsible for "complete medical and hospital service for the medical care and treatment of veterans."  38 U.S.C. § 7301(b).

which were revised on June 4, 2003.  *See* VHA Handbook 1106.1,[7]  ¶ 2 ("Rather than revising and publishing VA regulations so that they are equal to 42 CFR [Part] 493, this Handbook substitutes 42 CFR [Part] 493 for VA regulations.").  This Handbook was in place at the time of the challenged selections in late 2004.  *See* Def. Resp. at 1.[8]

On December 6, 2003, Congress converted certain positions within VA from the competitive civil service under Title 5 to "hybrid occupations" under Title 38.  *See* Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. No. 108-170, § 301, 17 Stat. 2042 (2003).  Medical Technologists were included among the positions to be converted to hybrid occupations.  *Id.*  Thereafter, on March 17, 2004, VA provided guidance and instructions on implementation.  *See* Def. Resp., Ex. 23 [Dkt. 36-5] (Human Resources Management ("HRM") Letter No. 05-04-02 (March 17, 2004)).  Letter 05-04-02 noted that some changes "specific to pay, promotions and advancement" in the new hybrid positions would "be prospective but delayed."  *Id.* ¶ 2.  Additionally, the Letter stated,

> **Promotions in the New Hybrid Occupations**. Until the Secretary issues permanent promotion policies, incumbents in the new hybrid occupations may be promoted up to the full performance

---

[7] The current version of VHA Handbook 1106.1 is available at http://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=1779.

[8] The Court takes judicial notice of the statutes and regulations embodying VA policies: Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. No. 108-170, § 301, 17 Stat. 2042 (2003); Clinical Laboratory Improvement Amendments of 1988, Pub. L. No. 100–578, 102 Stat. 2903 (1988); 42 C.F.R. Part 493; Department of Veterans Affairs, and Housing and Urban Development, and Independent Agencies Appropriations Act of 1992, Pub. L. No. 102-139, § 101(a), 105 Stat. 736 (1991); VHA Handbook 1106.1 (June 4, 2003); HRM Letter No. 05-04-02 (March 17, 2004); VA Handbook 5005/15, Pt. II, App. G24 (March 17, 2006); HRM Letter No. 05-06-06 (Aug. 8, 2006).  *See* Fed. R. Evid. 201(b) (providing that a court may judicially notice a fact that is not subject to "reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.'" (internal citation and quotation marks omitted)).

> level of the position *in accordance with the existing title 5 career ladder promotion process*.  Promotions above the full performance level are *subject to title 5 Merit Promotion procedures*.

*Id.* ¶ 3(a)(4).  The Office of Personnel Management's Medical Technologists Series, General Schedule (GS)-0644, which set forth the promotion requirements under Title 5 at the time of the selections in 2004, included a degree in medical technology, chemistry, or biology but did not mention any certifications.  Job Announcements at 10.

On March 17, 2006, VA issued Appendix G24 to VA Handbook 5005/15, Staffing, providing new qualification standards for Medical Technologists.  Def. Resp., Ex. 25 [Dkt. 36-7] (VA Handbook 5005/15, Pt. II, App. G24 (March 17, 2006)).  Specifically, paragraph 2(c) provided new certification requirements for VHA Medical Technologists:

> All candidates must currently possess or be eligible for and pass within one year the appropriate certification examination as a medical technologist or clinical laboratory scientist given by the American Society of Clinical Pathology Board of Registry (ASCP-BOR), the National Credentialing Agency (NCA), American Association of Clinical Chemists (AACC) or American Medical Technologists (AMT), or the American Association of Bioanalysts (AAB).

These new qualifications became effective on October 1, 2006.  *See* Def. Resp., Ex. 24 [Dkt. 36-6] (HRM Letter No. 05-06-06 (Aug. 8, 2006)) (explaining that the interim guidance provided in HRM Letter No. 05-04-02 remained effective until September 30, 2006.).

The Court concludes that ASCP certification did not become a requirement for the positions at issue until late 2006—almost two years *after* Mr. Patel's non-selection in November and December of 2004.[9]  Mr. Patel has failed to establish that the selectees were not qualified and has failed to offer evidence that the Secretary's reason for his non-selection—that the

---

[9] Mr. Patel offers no other argument or evidence to refute the regulatory and statutory record, of which the Court has taken judicial notice.

selectees outperformed Mr. Patel during their interviews—was mere pretext for a discriminatory purpose.

## IV.  CONCLUSION

The Court will grant the Secretary's Motion for Summary Judgment [Dkt. 28].  A memorializing Order accompanies this Memorandum Opinion.

Date: March 18, 2013                         _____/s/_____
                                             ROSEMARY M. COLLYER
                                             United States District Judge